IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MASON WOODWARD, INDIVIDUALLY, and as Administrator of the ESTATE OF CHRISTINE WOODWARD | CIVIL ACTION |
| | NO. |
| Plaintiff | JUDGE: |
| vs. | COMPLAINT FILED: |
| General Motors, LLC; General Motors Company; Motors Liquidation Company, Motors Liquidation Company f/k/a General Motors Company, | JURY TRIAL OF 12 DEMANDED |
| | ELECTRONICALLY FILED |
| Defendants | |

## COMPLAINT

### I.    INTRODUCTION:

Christine Woodward died February 11, 2023, at age 47 due to a fiery death while driving her 2013 GMC Acadia.  She was hit head-on by a State Trooper, heading to his job.  Both parties had braked before the impact.  The crash was totally survivable.  The Acadia did not have an adequate crumple zone and Christine Woodward was pinned to her seat by the rearward movement of the dashboard.  Likewise, her doors could not be opened because they were jammed towards the back of the car.  The glass windows could not be rolled down or opened.  A fire ensued as a result of a leak of flammable liquid from the Acadia.

Christine Woodward could be heard screaming as she burned to death in the car. The claim in this Complaint involved the fact that the Acadia was not crashworthy, as set forth in the Complaint, and caused the unnecessary and tragic death of Christine Woodward, a committed school teacher.

AND NOW comes Plaintiff, Mason Woodward, Individually and as the Administrator of the Estate of Christine Woodward, by and through their attorney, Clifford A. Rieders, Esquire, and sets forth as follows:

## Parties

1.    Plaintiff Mason Woodward is an adult individual who resides at 428 Pinnacle Ln., Granville Summit, PA 16926.

2.    Mason Woodward (hereinafter referred to as Plaintiff), is a surviving son of Christine Woodward, deceased, and was appointed Administrator of the Estate of Christine Woodward pursuant to Letters of Administration issued February 16, 2023, by the Register of Wills of Bradford County, Pennsylvania.

3.    Christine Woodward (hereinafter referred to as Decedent) was born on May 9, 1975, and was 47 years old at the time of her death on February 11, 2023, as a result of injuries sustained following a collision and Ms. Woodward's attempt to exit her vehicle, a 2013  GMC Acadia,  VIN 1GKKVNED1DJ146236 (hereinafter "the subject vehicle"), as set forth in detail below.

2

4.    Decedent resided at 2994 Old Kennedy Road, Troy, Pennsylvania, and was a citizen of the Commonwealth of Pennsylvania at the time of her death.

5.    Defendant General Motors Company is a Delaware corporation, with its headquarters and principal place of business in Detroit, Michigan.

6.    General Motors Company (hereinafter "General Motors") is a multinational automotive manufacturing company, operating worldwide through its subsidiaries and divisions, including in the Commonwealth of Pennsylvania.

7.    General Motors is the successor in interest to the General Motors Corporation, which entered a Chapter 11 bankruptcy reorganization in 2009. General Motors Corporation was the entity responsible for the design of the vehicle platform incorporated into the 2013 Acadia including the subject vehicle.

8.    In the alternative, Defendant General Motors, LLC (hereinafter GM) is the successor in interest to General Motors Corporation for purposes of liability for defective vehicles designed by General Motors Corporation, such as the 2013 Acadia.

9.    Defendant General Motors, LLC is an automotive manufacturing company headquartered in Detroit, Michigan. The entity is registered to do business in Pennsylvania.

10.    Defendant GM is wholly owned by General Motors Holdings, LLC, which is wholly owned by General Motors Company. GM is a limited liability

corporation formed in Delaware as a foreign limited liability company with a registered office in Pennsylvania.

11.    In the alternative, Defendant Motors Liquidation Company (hereinafter MLC) is the successor in interest to General Motors Corporation for purposes of liability for defective vehicles designed by General Motors Corporation such as the 2013 Acadia.

12.    Defendant GM's parts and distribution center in Pennsylvania is located at 200 Cabot Boulevard, East Langhorn, Pennsylvania 19030, in the Eastern District of Pennsylvania.  It was opened in 2001 where it has operated continuously.  It has approximately 404,000 square feet of space.

13.    Defendant employs 96 individuals at the Philadelphia parts and distribution center.

14.    Defendants General Motors and GM regularly do and solicit business and engage in a persistent course of conduct and derive substantial revenue from goods used or consumed or services rendered within the Commonwealth of Pennsylvania.

15.    At all relevant times Defendant GM was engaged in the design, manufacture, testing, marketing, distribution and sale of motor vehicles, including the  2013  GMC Acadia,  VIN 1GKKVNED1DJ146236 , across the world, and in particular, engages in the marketing, distribution and sale of motor vehicles in the

Commonwealth of Pennsylvania, through its related subsidiaries and operating units, independent dealerships, retailer dealers, outlets and authorized entities.

## Jurisdiction and Venue

16.     This action is brought pursuant to 28 U.S.C. §1332, which provides that the district courts shall have original jurisdiction of all civil actions between citizens of different states, where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See* 28 U.S.C. §1331(a)(1).

17.     This is a diversity action based upon Plaintiff and Defendants residing in different states and the amount in controversy exceeds the sum or value of $75,000 inclusive of interest and costs pursuant to 28 U.S.C. §1332. Jurisdiction is proper pursuant to Section 1332, as Plaintiff is deemed a citizen of the state where Decedent was a citizen, the Commonwealth of Pennsylvania, 28 U.S.C. §1332(c)(2).

18.     Defendant General Motors Company is a citizen of its state of incorporation, Delaware. Its principal place of business is in the State of Michigan. Defendant Motors Liquidation Company is a citizen of its state of incorporation, Delaware. Its principal place of business is Michigan. On information and belief Motors Liquidation Company was created to address the responsibilities, legal and otherwise, of the other named Defendants and as such is a proper party Defendant. Defendant GM's citizenship is determined by the citizenship of its members. On

5

information and belief all Defendants are found doing business in the Eastern District of Pennsylvania.

19.    Defendant GM's sole member is General Motors Holdings, LLC, a limited liability corporation formed in Delaware with its principal place of business in Detroit, Michigan.  General Motors Holdings, LLC, in turn, is 100% owned by General Motors Company, which is its sole member.

20.    Venue is permitted in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1390 et seq., and, in particular, §1391.  The Eastern District is a judicial district in which the Defendants reside.

21.    Defendants are an entity with the capacity to be sued in the Eastern District of Pennsylvania where the Defendants are subject to the court's personal jurisdiction with respect to the civil action in question and is a resident pursuant to 28 U.S.C. 1391(c) and (d).

22.    Pennsylvania is a state with multiple districts and therefore venue is proper against Defendants pursuant to 28 U.S.C. §1391(d).

23.    At all relevant times, Defendants regularly do and solicit business and engage in a persistent course of conduct and derive substantial revenue from goods used or consumed or services rendered, within the Eastern District of Pennsylvania.  Defendants conduct business within and maintain contacts with the Eastern District on a continuous and systematic basis.

6

## Factual Narrative

24.     On the night of February 11, 2023, Decedent was traveling east on SR 6 in Tioga County, Pennsylvania, in the subject vehicle on her way home from a stop at Wal-Mart after her son's basketball game.

25.     On the night of February 11, 2023, another driver, Michael Brown, was traveling West on SR 6 in Tioga County, Pennsylvania, in his 2014 Jeep Grand Cherokee on his way to work at the Pennsylvania State Police barracks in Wellsboro, Pennsylvania.

26.     Mr. Brown attempted to pass another vehicle also traveling west.

27.     Mr. Brown was unable to completely pass the intended vehicle and return to his own lane of travel and therefore caused a collision with Decedent's vehicle at the intersection of Aumick Road and Ritz Road in Sullivan Township, Tioga County, Pennsylvania.  Both vehicles braked before impact.

28.     Decedent would have survived the collision had the vehicle been crashworthy, had she not been pinned in the vehicle by the failed crumple zone which caused the dashboard to hold her place, and had the crumple zone functioned so as to permit the doors or windows to be opened.

29.     Upon impact of the two vehicles, which is the subject of this claim, the front of the occupant compartment of the subject vehicle collapsed pinning Plaintiff's Decedent in place and effectuating the inability to open the doors or

windows.  The vehicle caught on fire as result of the rupture of a flammable fluid containment, burning alive an otherwise salvageable driver.

30.    The occupant compartment of the subject vehicle collapsed inward in such a manner as to prevent the removal of Plaintiff's Decedent.

31.    Decedent was unable to open the doors or windows on the subject vehicle to exit her vehicle which was surrounded by flames.

32.    Decedent could be heard screaming for help and suffering greatly.

33.    The flames surrounding Decedent's vehicle intensified and engulfed the vehicle, tragically burning Decedent alive.

34.    Witnesses and observers were unable to extricate Decedent from the vehicle because the crumple zone failed causing Decedent to be pinned in place by the movement of the dashboard and by the inability to open the doors or windows.

35.    Decedent was declared deceased at the scene of the collision.

36.    Decedent died as a result of thermal injuries.

37.    The subject vehicle failed to perform properly to protect Plaintiff Decedent during the crash, and afterwards, and was not crashworthy.

38.    On information and belief, the design of the subject vehicle as manufactured, marketed and/or distributed by Defendants was based upon a defective vehicle platform design developed by a predecessor entity, and Defendants General Motors and GM placed the vehicle in the stream of commerce

in that defective condition as detailed herein. Defendant GM, or alternatively, Defendant General Motors is the legally responsible entity for the design, distribution, and failures of its predecessor General Motors Corporation, which designed the vehicle module in question as set forth in the allegations herein.

39.     On information and belief, the platform of the subject vehicle was based upon a design created by a predecessor entity, and Defendants' successor entities received and were aware of technical information, specifications, reports and other documents demonstrating design characteristics which made the vehicle unreasonably dangerous.  In addition, and in the alternative, one or more of the Defendants are legally responsible for the conduct of the entity which designed, constructed and placed the vehicle into the stream of commerce.

40.     As detailed in this Complaint, the subject vehicle's design was defective and unreasonably dangerous and violated consumers' expectations.

41.     As detailed in this Complaint, the subject vehicle's design was defective and unreasonably dangerous and violated relevant risk-utility design considerations.

42.     As detailed in this Complaint, the subject vehicle's design was defective and unreasonably dangerous and failed to contain adequate warnings and instructions.

43.     As detailed in this Complaint, the subject vehicle's design was defective and was unreasonably dangerous, not safe for its intended purposes.  In addition, and in the alternative, it violated consumer expectations.

44.     The subject vehicle was placed on the market by Defendants in an unreasonably dangerous and defective condition due to its flawed design features, in that the possibility of serious harm or death during a collision like that which occurred, outweighed the burden or cost of making the vehicle safe.

45.     Plaintiff would not have suffered severe injury and death had she been able to be extricated from the vehicle through the doors, the windows, or in any other reasonable way.

46.     As a direct and factual cause of the defective nature of the subject vehicle, Plaintiff's Decedent was subjected to catastrophic injuries, significant conscious pain and suffering, and ultimately perished.

## COUNT I – STRICT LIABILITY

47.     Paragraphs 1 through 46 are incorporated herein by reference as though fully set forth.

48.     The subject vehicle and its parts and components were defectively designed, manufactured, assembled, tested, labeled, inspected, marketed, distributed, monitored, promoted, sold, serviced and/or maintained by the Defendants.

10

49.     As discussed below, the subject vehicle's design was defective because it violated the reasonable expectations of consumers. These design defects were a factual cause of Plaintiff's Decedent's injuries and death.

50.     As discussed below, the subject vehicle's design was defective because it violated a risk-utility analysis. These design defects were a factual cause of Plaintiff's Decedent's injuries and death.

51.     As discussed below, the subject vehicle's design was defective because the subject vehicle was not distributed with proper warnings and instructions. Defendants failed to recall or issue appropriate warnings with respect to the aforementioned defects.  These design defects were a factual cause of Plaintiff's Decedent's injuries and death.

52.     As discussed below, the subject vehicle was defectively manufactured, and this defective manufacturing, design and failure to recall or warn was a factual cause of Decedent's injuries and death.

53.     The subject vehicle and its parts and components were defective and unreasonably dangerous when the Defendants placed them into the stream of commerce because the subject vehicle had one or more of the following defects:

53.1   Inadequate frontal crashworthiness;

53.2   Defective design of the front-end structure;

53.3   The design lacked a safe and acceptable crumple zone;

11

53.4    The design lacked adequate structure or a "reinforced cab sub-frame assembly" to absorb or deflect crash energy in a foreseeable frontal collision;

53.5    The design lacked a safe and effective occupant protection zone;

53.6    The design permitted and created an interior in which the driver was pinned to her seat by the movement of the dashboard which made it impossible to extricate the Plaintiff from the vehicle;

53.7    Inadequate welds in the front-end;

53.8    The design lacked crush bars in the doors. The doors therefore became frozen or locked in position and could not be pulled or forced open;

53.9    Failure to equip the subject vehicle with additional front-end protection such as a bull bar, grill guard, front underrun protection system (FUPS) or similar device;

53.10   The design was created so that the windows could not be broken or forced open, the doors were locked, and the occupant became a prisoner in a collision which was survivable;

53.11   Failure to warn drivers and passengers, including Plaintiff Christine Woodward, about the hazards associated with the aforesaid defective

design of the subject vehicle, including the complete lack of occupant protection in a foreseeable front collision;

53.12   Failure to warn or advise drivers, users and consumers of feasible safer alternative designs which were available and in production elsewhere in the world at the same time that the subject vehicle was designed, manufactured, assembled, tested, labeled, inspected, marketed, distributed, monitored, promoted and sold by the Defendant in the United States;

53.13   The subject vehicle lacked overall crashworthiness and structural integrity to prevent occupant injuries in a foreseeable crash;

53.14   The vehicle was further defective because of the rupture of the lines carrying flammable fluid and/or the master cylinder causing the fire;

53.15   The design of the vehicle was unreasonably dangerous because it did not provide safeguards to prevent or retard any flammable fluid rupture from leaking into areas where it would become combustible; and

53.16   The design of the front compartment of the subject vehicle was not crashworthy and was unreasonably dangerous because it did not provide safeguards to prevent or retard any fire from leaking

flammable fluid from spreading into the passenger compartment in a collision such as occurred in this case.

53.17 Defendants failed to recall or to issue warnings with respect to the defects.

54.    The Defendants knew or had reason to know of the substantial dangers involved in the reasonably foreseeable use of the subject vehicle and its parts and components, whose defective design, manufacturing and warnings caused the Plaintiff to suffer severe and permanent injuries.

55.    By engaging in said conduct, the Defendants are strictly liable to Plaintiff.

56.    Said conduct of the Defendants was so willful, wanton, malicious, reckless and in such disregard for the consequences as to reveal a conscious indifference to the clear risk of death or serious bodily injury and merits the imposition of punitive damages. Defendants were aware of and knew of the dangerous and defective qualities of this vehicle, as described, and nevertheless failed to recall it, notify users or the public, and continued to manufacture and distribute said vehicle.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, for punitive damages, and for costs in an amount in excess of $75,000.00 exclusive of interest and costs.

14

## COUNT II

57.     Paragraphs 1 through 56 are incorporated herein by reference as though fully set forth.

58.     The Defendants warranted and represented, both expressly and impliedly, that the subject vehicle was reasonably safe, fit for its intended purpose, and reasonably foreseeable use and of merchantable quality.

59.     Plaintiff Christine Woodward relied upon the skill and judgment of the Defendants and upon the aforesaid warranties and representations and expected that the subject vehicle was reasonably safe.

60.     The Defendants' representations and warranties were false and misleading and were breached because the subject vehicle was defective, hazardous, dangerous, not reasonably safe, not crashworthy, not fit for its intended or reasonably foreseeable uses, not of merchantable quality, and did not meet the expectations of consumers, including Plaintiff.

61.     Thus, the Defendants breached their expressed and implied warranties.

62.     The Defendants' breaches were a direct and factual cause of the damages suffered to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, for punitive damages, and for costs in an amount in excess of $75,000.00 exclusive of interest and costs.

## COUNT III

63.     Paragraphs 1 through 62 are incorporated herein by reference as though fully set forth.

64.     The GM Defendants were negligent in designing, manufacturing, assembling, testing, labeling, inspecting, marketing, distributing, monitoring, promoting selling, servicing, and/or maintaining the subject vehicle, its parts, components and failed to recall or issue warnings.

65.     The negligence consisted of the following:

65.1   Inadequate frontal crashworthiness;

65.2   Defective design of the front-end structure;

65.3   The design lacked a front crumple zone;

65.4   The design lacked adequate structure or a "reinforced cab sub-frame assembly" to absorb or deflect crash energy in a foreseeable frontal collision;

65.5   The design lacked a safe and effective occupant protection zone;

16

65.6    The design permitted and created an environment in which the driver was pinned to her seat by the movement of the dashboard which made it impossible to extricate the Plaintiff from the vehicle;

65.7    Inadequate welds in the front-end;

65.8    The design lacked crush bars in the doors.  The doors therefore became frozen or locked in position and could not be pulled or forced open;

65.9    Failure to equip the subject vehicle with additional front-end protection such as a bull bar, grill guard, front underrun protection system (FUPS) or similar device;

65.10  The design was created so that the windows could not be broken or forced open, the doors were locked, and the occupant became a prisoner in a collision which was survivable;

65.11  Failure to warn drivers and passengers, including Plaintiff Christine Woodward, about the hazards associated with the aforesaid defective design of the subject vehicle, including the complete lack of occupant protection in a foreseeable frontal collision and failed to recall the vehicle;

65.12  Failure to warn or advise drivers, users and consumers of feasible safer alternative designs which were available and in production

17

elsewhere in the world at the same time that the subject vehicle was designed, manufactured, assembled, tested, labeled, inspected, marketed, distributed, monitored, promoted and sold by the Defendants in the United States;

65.13 The subject vehicle lacked overall crashworthiness and structural integrity to prevent occupant injuries in a foreseeable crash;

65.14 The vehicle was further defective because of the rupture of the lines carrying flammable fluid and/or the master cylinder causing the fire;

65.15 The design of the vehicle did not include safeguards to prevent or retard any flammable fluid from leaking into areas where it would become combustible; and

65.16 The design of the front compartment of the vehicle did not include safeguards to prevent or retard fire from initiated from flammable fluid from spreading into the passenger compartment.

66.    The Defendants were aware of the defects in the subject vehicle and its parts and components, or should have been, through numerous other similar incidents, lawsuits, customer complaints, reports, and other sources but negligently failed to take the appropriate steps to redesign the subject vehicle, its parts and components or warn Plaintiff and the public of the risks associated with the same.

Moreover, the Defendants continued to sell these products, even after being put on notice of serious injuries resulting from the subject vehicle.

67.    On information and belief, the platform of the subject vehicle was based upon a design created by a predecessor entity, and Defendants received and were aware of technical information, specifications, reports and other documents demonstrating design characteristics Defendants knew or should have known made the vehicle unreasonably dangerous.

68.    The aforementioned negligence of Defendants was a direct and factual cause of the damages suffered by the Plaintiff.

69.    The Defendants are therefore liable to the Plaintiffs.

70.    The conduct of the Defendants was so willful, wanton, malicious, reckless, and in such disregard for the consequences as to reveal a conscious indifference to the clear risk of death or serious bodily injury and merits the imposition of punitive damages.

71.    The defects in the subject vehicle were a direct and factual cause of the severe and permanent injuries and death suffered by the Plaintiff.

72.    As a direct and factual result of Defendants' negligence Decedent sustained serious, life-threatening, painful and permanent injuries including but not limited to, the following, for which recovery is sought:

      i.    Fourth degrees burns along Decedent's entire body surface.

   ii.   Charring of Decedent's internal organs including her heart, lungs, liver, spleen, intestines and stomach.

   iii.   Pain and Suffering;

   iv.   Emotional distress;

   v.   Conscious appreciation of her impending death;

   vi.   Death;

   vii.   Lost wages; future wages and earning capacity;

   viii.   Such other injuries, valuables and damages as are properly allowed by Pennsylvania law.

73.   As a direct and factual result of Defendants' negligent conduct as aforesaid funeral expenses and expenses of administration have been incurred for which recovery is sought.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, for punitive damages, and for costs in an amount in excess of $75,000.00 exclusive of interest and costs.

## COUNT IV

74.   Paragraphs 1 through 73 are incorporated herein by reference as though fully set forth.

75.    Defendants failed or refused to recall the vehicle or to issue notices and warnings either at the time of manufacturing or thereafter as it became aware or should have become aware of the defects in the vehicle as aforesaid.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, for punitive damages, and for costs in an amount in excess of $75,000.00 exclusive of interest and costs.

## COUNT V – WRONGFUL DEATH

76.    Paragraphs 1 through 75 are incorporated herein by reference as though fully set forth.

77.    Due to the conduct of Defendants, as aforesaid, Decedent died and has left individuals entitled to recover for her death.

78.    Plaintiff brings this action under and by virtue of 42 Pa. C.S. § 8301 and Pa. R.C.P. 2202(a) on her own behalf and on behalf of those entitled to recover damages for the wrongful death of Decedent.  Plaintiff, by reason of the death of Decedent, is entitled to recover in addition to other damages, amounts for reasonable hospital, nursing and medical expenses, funeral expenses, financial losses, including loss of right to future maintenance and support and other expenses of administration of the estate.

79.    Decedent had three children, adult son, Mason Woodward; adult son, Evan Woodward; and minor daughter, R.W.

80.    Decedent's statutory survivors have suffered the loss of Decedent's services, companionship, society, comfort, guidance, solace, and protection, and other damages as are recoverable under the Wrongful Death Act of Pennsylvania.

81.    Decedent did not bring an action for personal injuries during her lifetime.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, for punitive damages, and for costs in an amount in excess of $75,000.00 exclusive of interest and costs.

## COUNT VI – SURVIVAL ACTION

82.    Paragraphs 1 through 81 are incorporated herein by reference as though fully set forth.

83.    Plaintiff brings this action on behalf of the Estate of Decedent under and by virtue of the laws of the Commonwealth of Pennsylvania.  42 Pa. C.S. §§ 8302 and 3373.

84.    Plaintiff's claims, on behalf of said Estate, damages suffered by reason of the death of Decedent, include the following:

84.1   Decedent's mental, emotional and physical pain, suffering and inconvenience prior to her death;

84.2   Decedent's financial losses suffered as a result of her death.

84.3   Decedent's loss of enjoyment of life prior to death; and

84.4   Such other damages, including punitive damages, as are recoverable

in a survival action.

WHEREFORE, Plaintiff demands judgment against Defendants for

compensatory damages, for punitive damages, and for costs in an amount in excess

of $75,000.00 exclusive of interest and costs.

Respectfully submitted,

RIEDERS, TRAVIS, DOHRMANN,
MOWREY,  HUMPHREY & WATERS


/s/ Clifford A. Rieders, Esquire_____
Clifford A. Rieders, Esquire PA ID 20962
Sasha Coffiner, Esquire PA ID 320294
Attorneys for Plaintiff
161 W. Third St.
Williamsport, PA 17701
Telephone: (570) 323-8711
Fax: (570) 323-4192