## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **MASON WOODWARD,** | |
| *Plaintiff,* | |
| v. | **Case No. 2:25-cv-00605-JDW** |
| **GENERAL MOTORS, LLC,** | |
| *Defendant.* | |

## MEMORANDUM

Federal courts give deference to a plaintiff's choice of forum, but the choice isn't the final word. In 28 U.S.C. § 1404, Congress gave courts the power to transfer a case away from a plaintiff's chosen forum under certain circumstances. Mason Woodward filed this case in the Eastern District Of Pennsylvania even though this District has no connection to the events at issue. Venue lays here, but the Middle District Of Pennsylvania is the District where the car accident giving rise to the claim occurred and where the people who witnessed the accident reside. I will therefore grant the motion that General Motors LLC filed to transfer the case.

## I.    BACKGROUND

On February 11, 2023, Christine Woodward was driving a 2013 GMC Acadia when she collided head-on with another car on State Route 6 in Tioga County, Pennsylvania. Tioga County is in the Middle District. The crash caused the front of the passenger

compartment to pin Ms. Woodward in place and prevented her from opening the doors or windows. The car caught fire, and bystanders could hear Ms. Woodward screaming for help and suffering but could not get her out of the car. She burned to death.

Mr. Woodward, Ms. Woodward's son, brings claims both individually and as the administrator of Ms. Woodward's estate. He alleges that Ms. Woodward's car was not crashworthy. He asserts claims against GM for strict products liability, breach of warranty, negligence, and wrongful death, and he seeks both compensatory and punitive damages. Mr. Woodward lives in GM moved to transfer this action to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

 Ms. Woodward resided in Bradford County, Pennsylvania, at the time of her death, and Mr. Woodward still lives there. Bradford County is in the Middle District. Plaintiff's counsel is based in Williamsport, Pennsylvania, which is also in the Middle District.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses and in the interest of justice, a district court may transfer a civil action to another district where the case might have been brought. Although a district court has broad discretion to determine whether a transfer is merited, motions to transfer "are not to be liberally granted." *Dinterman v. Nationwide Mut. Ins. Co.*, 26 F. Supp. 2d 747, 749 (E.D. Pa. 1998) (citing *Stewart Org. v. Ricoh, Inc.*, 487 U.S. 22, 29 (1988)). The party seeking transfer bears the burden of persuasion. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

Courts may consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests be better served by transfer to a different forum." *Id.* Thus, in addition to the three factors enumerated in the statute – convenience of the parties, convenience of the witnesses, and the interests of justice – courts consider a non-exhaustive list of "relevant private and public factors" to determine whether transfer is appropriate. *In re McGraw-Hill Educ. Holdings LLC,* 909 F.3d 48, 57 (3d Cir. 2018). Private interest factors include: "(1) the plaintiff's original forum preference; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of parties; (5) the convenience of witnesses; and (6) the location of books and records." *Jumara,* 55 F.3d at 879. Public interest factors include: "(1) enforceability of the judgment; (2) the practical considerations that could make the trial easy, expeditious, or inexpensive; (3) court congestion in the competing fora; (4) local interest in deciding a controversy at home; (5) the fora's public policies; and (6) the trial judge's familiarity with applicable state laws in diversity cases." *Id.*

## III. DISCUSSION

Mr. Woodward could have filed this case in the Middle District both because a substantial part of the events giving rise to the claim occurred there and because GM resides there. *See* 28 U.S.C. § 1391(b)(1)(2).[1] Venue would be proper in the Middle District

---

[1] GM resides in the Middle District because it is subject to personal jurisdiction in Pennsylvania. *See* 28 U.S.C. § 1391(c)(2).

because a substantial part of the events giving rise to the claim occurred in Tioga County, in the Middle District. *See* 28 U.S.C. § 1391. Having satisfied that threshold question, I consider the applicable private and public interest factors to determine the appropriateness of transfer. These factors favor transfer to the Middle District.

### A.    Private Interest Factors

Two private interest factors favor transfer: the location of the accident giving rise to the claim and GM's preference to litigate in the Middle District. One factor weighs against transfer: Mr. Woodward's preference to litigate in the Eastern District. The remaining factors are neutral.

Beginning with the factors that favor transfer, the accident occurred in the Middle District. Though product liability cases do not always have a single situs, courts in the Third Circuit have concluded that products liability claim arises where the product operated and the injury occurred. *See, e.g., In re Consol. Parlodel Litig.*, 22 F. Supp.2d 320, 326 (D.N.J. 1998); *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 198 (E.D. Pa. 2008). Mr. Woodward argues that, because the case concerns the design and manufacture of a GM vehicle involved in an accident and not the accident itself, this factor should receive minimal deference. This reasoning, however, discounts the significant role the site of the accident could play in this case. First responders and eyewitnesses can comment on the state of the vehicle following the crash, failed efforts to extract Ms. Woodward from the vehicle, and her suffering throughout the ordeal. *See Coppola,* 250 F.R.D. at 198. Physical

evidence may also help to prove the deficiency of the particular vehicle. Such evidence will help to establish Mr. Woodward's claim that GM in fact improperly constructed the vehicle and to assessing damages. Thus, while the location of the accident might be less relevant here than, say, in a tort claim against the adverse driver, it still weighs into the analysis and favors transfer to the Middle District.

GM also prefers to litigate in the Middle District because the accident happened and witnesses reside there. A defendant's preference receives "considerably less weight than [p]laintiff's," but it nonetheless factors into the analysis. *EVCO Tech & Dev. Co., LLC v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005).

The only factor that weighs against transfer is Mr. Woodward's choice of venue. Generally, a plaintiff's preference for a proper forum "is a paramount consideration...and should not be lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks and citations omitted). However, the deference typically afforded this choice softens when the plaintiff does not reside in the chosen forum and, further, when the chosen forum has no significant connection to the facts giving rise to the case. *See First Union Nat. Bank v. United States,* 55 F. Supp. 2d 331, 333 (E.D. Pa. 1999); *EVCO Tech,* 379 F. Supp. 2d at 730. In this case, none of the parties resides in the Eastern District, and nothing relevant to the case occurred in the Eastern District. The only connection to the Eastern District that Mr. Woodward identifies is a GM distribution center located in Bucks County, Pennsylvania but he provides no evidence to support an

inference that the facility has any relation to the case. Instead, Mr. Woodward suggests that later discovery will determine whether any parts of the vehicle involved in the accident came from the facility. But so what? Mr. Woodward doesn't explain how the parts passing through a distribution center would have any bearing on their design, manufacture, or performance in the accident. In any event, at this point in the case, Mr. Woodward cannot say that the parts did pass through that facility, so the presence of that distribution facility in this District does not provide a connection to this case. I therefore assign minimal weight to Mr. Woodward's choice of forum.

The remaining factors are neutral. Courts often consider the convenience of witnesses to be the most important factor in determining whether to grant a transfer of venue. *See Lindley v. Caterpillar*, 93 F. Supp. 2d 615, 617 (E.D. Pa. 2000). But this factor is only relevant to the extent that witnesses may be unavailable for trial in one of the fora. *Jumara,* 55 F.3d at 879. Most fact witnesses in this case likely reside in the Middle District. A witness in Tioga County would be subject to a trial subpoena in Philadelphia so long as coming here would not entail substantial expense. *See* FED. R. CIV. P. 45(c)(B)(ii). GM does not provide evidence to conclude that any witness would incur substantial expense by traveling to Philadelphia or that witnesses would be otherwise unavailable in the Eastern District. Without such a showing, the factor bears no weight in the analysis. The same principle applies to, and the same conclusion results from, the location of books/records. The factor only becomes relevant upon a showing that the files are unavailable in the

alternative forum, which parties do not demonstrate. *Jumara,* 55 F.3d at 879. The factor thus remains neutral.

### B.    Public Interest Factors

None of the public interest factors carries substantial weight in this case, but to the degree they are relevant, they favor transfer. Looking at practical trial considerations, the accident site, relevant evidence, and witnesses are all in the Middle District, making it a more convenient venue than the Eastern District. This does not tilt strongly, though, because the two districts are in close proximity. *See Jumara*, 55 F.3d at 882. The Middle District does have a sharper interest than the Eastern District in deciding the controversy, as the events occurred within its borders and bore consequences for its residents, namely Ms. Woodward.

The remaining public interest factors are neutral. Mr. Woodward argues that the Eastern District has more judges and thus could better accommodate the case, but in the same breath he concedes that the District handles a much larger caseload than the Middle District. Perhaps for this reason, he does not analyze the number of cases per judge or the median time to resolution, figures that provide better insight into a court's congestion. *See Stewart v. First Student Inc.*, 639 F. Supp. 3d 492, 502 (E.D. Pa. 2022). Without evidence to that effect, I find no reason to assign weight to this factor. Finally, because both Districts are in Pennsylvania, the enforceability of the judgment, the fora's public policies, and the judge's familiarity with the law are neutral factors.

## IV. CONCLUSION

This case arises from an auto accident in the Middle District, and there's no connection to the Eastern District. Mr. Woodward seems to prefer the Eastern District, but he offers no good reason for the case to remain here. I will therefore transfer this case to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). An appropriate Order follows.

<b>BY THE COURT:</b>

_/s/ Joshua D. Wolson_
JOSHUA D. WOLSON, J.

June 6, 2025