IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MASON WOODWARD, Individually and as Administrator of the ESTATE OF CHRISTINE WOODWARD,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS, LLC,<br><br>Defendant. | No. 4:25-CV-1025<br><br>(Chief Judge Brann) |
| GENERAL MOTORS, LLC,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>MICHAEL J. BROWN,<br><br>Third-Party Defendant. | |

MEMORANDUM OPINION

DECEMBER 8, 2025

On February 4, 2025, Plaintiff, Mason Woodward, appearing Individually and as the Administrator of the Estate of his late mother Christine Woodward, filed a six-count complaint against Defendant, General Motors, LLC ("GM"), in the United

States District Court for the Eastern District of Pennsylvania.[1] The matter was transferred to this District on June 6, 2025.[2]

On June 18, 2025, GM answered Mr. Woodward's complaint.[3] GM's answer contains forty-nine affirmative defenses,[4] and on July 9, 2025, Mr. Woodward moved to strike those defenses.[5] In parallel, on July 2, 2025, GM filed a third-party complaint bringing two counts against Michael J. Brown.[6] On September 22, 2025, Mr. Brown moved to dismiss the third-party complaint.[7]

The motions are now ripe for disposition; for the reasons that follow, both are granted in part and denied in part.

I. BACKGROUND

At the pleadings stage of litigation, the Court must generally accept the well-pled allegations as true.[8] Where, as here, the motion to dismiss challenges a third-party complaint which incorporates by reference the allegations in the primary complaint, the allegations of both complaints form the facts that must be considered.[9] Those allegations are as follows.

---

[1] Doc. 1 (Compl.).
[2] Doc. 17 (Transfer Notice).
[3] Doc. 20 (Answer).
[4] *Id.* at 36-48.
[5] Doc. 31 (Mot. to Strike).
[6] Doc. 29 (Third-Party Compl.).
[7] Doc. 41 (Mot. to Dismiss).
[8] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[9] *Erie Ins. Exch. v. Danby Prods., Inc.*, No. 10-CV-1271, 2011 WL 2470608, at *1 n.1 (W.D. Pa. June 21, 2011).

On February 11, 2023, Christine Woodward ("Christine") was driving a 2013 GMC Acadia east on SR 6 in Tioga County, Pennsylvania.[10] Michael Brown was driving in the opposite direction.[11] Mr. Brown attempted to pass another vehicle, ran out of space, and hit Christine head-on.[12] Christine survived the initial collision but was trapped inside the Acadia.[13] When the Acadia caught fire, Christine was unable to escape and tragically died.[14] Mr. Brown stood criminal trial and was convicted by a jury of homicide by vehicle and a number of other traffic violations.[15]

Mr. Woodward filed two different lawsuits to recover for Christine's death. He sued Mr. Brown in the Court of Common Pleas of Tioga County, Pennsylvania on July 12, 2024.[16] And in this federal suit, Mr. Woodward seeks to recover only from GM.[17]

In the Tioga County proceeding, Mr. Woodward alleges that Mr. Brown was negligent, reckless, and negligent *per se* and seeks damages for all of Christine's

---

[10] Doc. 1 ¶¶ 3, 24.
[11] *Id.* ¶ 25.
[12] *Id.* ¶¶ 26-27.
[13] *Id.* ¶¶ 28-31.
[14] *Id.* ¶¶ 29-36.
[15] Doc. 29 ¶ 16; *see Commonwealth v. Brown*, No. 59-CR-0000278-2023 (Pa. Ct. C.P. Tioga Cnty. May 31, 2024). The Court is permitted to take judicial notice of the state court proceeding on a motion to dismiss. *Taggart v. Deutsche Bank Nat'l Tr. Co.*, No. 20-CV-5503, 2021 WL 2255875, at *2 n.3 (E.D. Pa. June 3, 2021) (quoting *Schafer v. Decision One Mortg. Corp.*, No. 08-CV-5653, 2009 WL 1532048, at *3 (E.D. Pa. May 29, 2009)).
[16] *See* Doc. 34-1 (State Court Docket Sheet); *Woodward v. Brown*, No. 0392-CV-2024 (Pa. Ct. C.P. Tioga Cnty.).
[17] Doc. 1.

injuries including her death.[18] In this proceeding, Mr. Woodward alleges that GM is responsible for Christine's death based on theories of strict liability for defective design (lack of crashworthiness), breach of express and implied warranties, negligence, and failure to warn/recall.[19] Specifically, Mr. Woodward alleges several times that Christine "would have survived the collision had the vehicle been crashworthy."[20]

GM impleaded Mr. Brown in this matter, alleging counts for negligence and "indemnification and contribution."[21] GM's theory is that Christine's injuries, including her death, were caused in whole or in part by Mr. Brown's conduct.[22]

## II.   DISCUSSION

The Court begins by resolving the remaining issues in Mr. Woodward's motion to strike before considering Mr. Brown's challenges to GM's third-party complaint.

### A.   Motion to Strike

"Motions to strike are generally disfavored."[23] Nevertheless, "a motion to strike under Rule 12(f) is the 'primary procedure' for objecting to an insufficient

---

[18] Compl. ¶¶ 18-19, 22, 37-44, *Woodward v. Brown*, No. 0392-CV-2024 (Pa. Ct. C.P. Tioga Cnty. July 12, 2024).
[19] Doc. 1 at 10-21.
[20] *Id.* ¶¶ 28-30, 45.
[21] Doc. 29 at 5-7.
[22] *Id.* ¶ 18.
[23] *Carson v. HP Inc.*, 750 F. Supp. 3d 376, 410 (D. Del. 2024) (citing *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 356 (D. Del. 2009)).

4

affirmative defense."²⁴ The Court may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."²⁵ Here, Mr. Woodward bears the burden of demonstrating "that the challenged matter should be stricken."²⁶

"To properly plead an affirmative defense, a defendant must 'at minimum,' provide a concise 'statement of the grounds for asserting an affirmative defense that demonstrates a logical relationship to the lawsuit, or refer to general facts elsewhere in the parties' pleadings.'"²⁷ "For an affirmative defense to meet the pleading requirements of Rule 8, 'the plaintiff must be able to infer why an affirmative defense may be germane to the litigation based on some general allegations in the pleadings. The facts may be threadbare, but they must be there.'"²⁸ In other words, it is not sufficient to rattle off a boilerplate list of various terms of art. Instead, the defendant must provide at least some "citation to any other fact or premise from which an inference may arise that the stated defense is logically related to the case in any way."²⁹

---

24 *Barnes v. Truck-Lite Co., LLC*, No. 24-CV-0019, 2024 WL 2979550, at *2 (M.D. Pa. June 13, 2024) (quoting *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989)).
25 Fed. R. Civ. P. 12(f).
26 *Roamingwood Sewer & Water Ass'n v. Nat'l Diversified Sales, Inc.*, 509 F. Supp. 3d 198, 204 (M.D. Pa. 2020) (citing *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019)).
27 *Horan v. Gross*, No. 22-CV-1166, 2024 WL 115798, at *8 (M.D. Pa. Jan. 10, 2024) (quoting *U.S. Bank Nat'l Ass'n v. Gerber*, 380 F. Supp. 3d 429, 438 (M.D. Pa. 2018)); *see Dann v. Lincoln Nat'l Corp.*, 274 F.R.D. 139, 145-46 (E.D. Pa. 2011).
28 *Horan*, 2024 WL 115798, at *8 (quoting *Balon v. Enhanced Recovery Co., Inc.*, 316 F.R.D. 96, 104 (M.D. Pa. 2016))
29 *Mifflinburg Telegraph, Inc. v. Criswell*, 80 F. Supp. 3d 566, 573 (M.D. Pa. 2015) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d ed.)).

At the end of briefing on the motion to strike, Mr. Woodward agreed to withdraw his motion as to all but affirmative defenses 13 and 24.[30] The Court will limit its analysis to those defenses. However, I feel obligated to note that I agree with Mr. Woodward that *forty-nine* affirmative defenses is an excessive response to a complaint as straightforward as this one. On a cursory review, many of GM's defenses are pure boilerplate, and even more are not affirmative defenses at all, "but general defenses, which may be stricken as immaterial."[31] In the future, it would be advisable for counsel to spend more time developing the allegations supporting valid and potentially applicable affirmative defenses and less time thinking of yet another objection to throw on the pile.[32]

Mr. Woodward challenges affirmative defense 13—alleging spoliation—because spoliation is not an affirmative defense. He is correct. "Spoliation is not an affirmative defense, but rather an evidentiary doctrine."[33] GM is perfectly free to

---

[30] Doc. 40 (Mot. to Strike Reply) at 4.

[31] *Horan*, 2024 WL 115798, at *8 (citing *Gerber*, 380 F. Supp. 3d at 439); *see id.* ("The difference between a general defense and an affirmative defense is that a general defense negates an element of plaintiff's *prima facie* case, while an affirmative defense excuses the defendant's conduct even if the plaintiff is able to establish a *prima facie* case." (quoting *Donohoe v. Am. Isuzu Motors, Inc.*, 155 F.R.D. 515, 518 (M.D. Pa. 1994))).

[32] GM also argues that the motion to strike should be denied because Mr. Woodward did not seek concurrence in the motion as required by Local Rule 7.1. Doc. 34 (Mot. to Strike Opp'n) at 5-6. Although the Court agrees that the concurrence requirement serves a useful purpose and is important, there is little to be gained from stringently enforcing it here, after the motion has been briefed and the issues narrowed.

[33] *Gerber*, 380 F. Supp. 3d at 440 (citing *Donohoe*, 155 F.R.D. at 520); *see Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995) ("Even though application of the rule could prove to be critical to a party's recovery on a claim, it is not an affirmative defense, but a rule of evidence, to be administered at the discretion of the trial court.").

assert spoliation if it is unable to gather necessary evidence. Until then, there is no need to invoke the doctrine, and affirmative defense 13 is stricken.

Mr. Woodward's objection to affirmative defense 24—asserting *res judicata* and collateral estoppel—is primarily that the defenses are not relevant to this case on the merits.[34] But pleading an affirmative defense does not require the defendant to show that the defense will successfully apply.[35] It is enough to simply demonstrate that the defense is logically related to the lawsuit. Of course, GM failed to meet even that lax standard when it merely invoked the concepts of *res judicata* and collateral estoppel without so much as noting the existence of a related case.[36] Nevertheless, given that Mr. Woodward does not seem to mind GM's practice of providing factual support for its affirmative defenses in its briefing,[37] and GM's identification of two potentially applicable matters in its opposition,[38] the motion to strike affirmative defense 24 is denied to save us all from needlessly amending the pleadings.

---

[34] Doc. 40 at 3.
[35] *See Roamingwood*, 509 F. Supp. 3d at 204 ("Motions to strike should not be used to persuade a court to determine disputed questions of law." (citing *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 218 (D.N.J. 1993))).
[36] *Cf. Barnes*, 2024 WL 2979550, at *4 n.30 (collecting authority for the proposition that a defendant must at least identify what statute might apply when asserting an affirmative defense based on a statute of limitations).
[37] *See* Doc. 40 at 4 (withdrawing motion to strike "based on representations made by Defense counsel in their responsive brief").
[38] *See* Doc. 34 at 8-9.

**B.    Motion to Dismiss**

Turning next to Mr. Brown's motion to dismiss the third-party complaint, he attacks GM's negligence count as defective on several fronts and its contribution count for failing to state a claim under Pennsylvania law and, for essentially the same substantive reasons, failing to satisfy the rules of joinder.[39] In the briefing, GM agreed to withdraw its indemnification claim.[40] I agree with Mr. Brown on the negligence issue, but disagree on contribution.

Although third-party complaints are brought under Federal Rule of Civil Procedure 14, "the traditional 12(b)(6) standards" apply on a motion to dismiss.[41] Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[42] and *Ashcroft v. Iqbal*,[43] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[44]

---

[39] *See generally* Doc. 43 (Mot. to Dismiss Brief).
[40] Doc. 45 (Mot. to Dismiss Opp'n) at 15.
[41] *Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 907 (M.D. Pa. 2019) (quoting *Musto v. Off. Depot, Inc.*, No. 18-CV-2427, 2019 WL 2994230, at *2 (M.D. Pa. July 9, 2019)).
[42] 550 U.S. 544 (2007).
[43] 556 U.S. 662 (2009).
[44] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

### 1. Negligence

Federal Rule of Civil Procedure 14(a) provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." This means that "the third party's liability is some way dependent on the outcome of the main claim or . . . the third party is secondarily liable to the defendant."[45] Accordingly, "third-party claims must be brought under a theory of derivative liability such as indemnification or contribution. 'Courts have stringently followed the rule that a third-party complaint may not set forth a claim of the third-party defendant's liability to the plaintiff.'"[46]

GM's negligence count is based on just such an impermissible theory of direct liability between Mr. Brown and Mr. Woodward. Specifically, GM alleges that "any damage Plaintiff may be entitled to recover as a result of the accident described in Plaintiff's Complaint, any liability on the part of GM LLC being denied, are a direct and proximate result of the negligence, carelessness and/or other liability producing conduct of Third-Party Defendant, Michael J. Brown."[47] Nowhere in this count or

---

[45] *F.D.I.C. v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994) (quoting 6 Charles Alan Wright, Arthur K. Miller, Mary K. Kane, Federal Practice and Procedure § 1446, at 355-58 (1990)); *Sevenson Env't Servs., Inc. v. Watersolve, LLC*, No. 16-CV-5158, 2020 WL 3468209, at *2 (D.N.J. June 25, 2020).

[46] *Sevenson*, 2020 WL 3468209, at *2 (citing *Toberman v. Copas*, 800 F. Supp. 1239, 1242 (M.D. Pa. 1992) and quoting *Slater v. Skyhawk Transp., Inc.*, 187 F.R.D. 185, 203 (D.N.J. 1999)); *see Fortunato v. May*, No. 04-CV-1140, 2009 WL 703393, at *7 (W.D. Pa. Mar. 16, 2009) ("It is improper for a third-party complaint to set forth a claim of the third-party defendant's liability to the plaintiff.").

[47] Doc. 29 ¶ 20.

elsewhere in the third-party complaint does GM allege that Mr. Brown was negligent with regard to GM. If Mr. Brown's negligence was the sole cause of Christine's death, GM is simply not liable (in other words, Mr. Woodward's claim against GM would fail for lack of causation). If Mr. Brown's negligence was a partial cause, GM can recover from him on a theory of secondary liability. But this kind of direct impleader is improper, and Mr. Brown's motion to dismiss GM's negligence count is therefore granted.

### 2. Contribution

Turning to contribution, Mr. Brown argues that he cannot be liable on such a claim because Mr. Woodward's claims against GM do not permit a joint tortfeasor theory.[48] In Pennsylvania, contribution "exists between joint tort-feasors."[49]

Where the defendant in an original action impleads a third-party defendant on a contribution theory, and the third-party defendant "[was] not [a] defendant[] in the original case, 'the party seeking contribution must stand in the shoes of the original plaintiff and prove that the new defendant was a joint tortfeasor in that his tortious conduct also caused the harm at issue.'"[50] This step is often unnecessary because most plaintiffs will bring a single suit against all potential causes of a given harm,

---

[48] The Court's analysis also covers Mr. Brown's procedural arguments, which are rooted in the idea that joining Mr. Brown was improper because he is not a joint tortfeasor.
[49] 42 Pa. Cons. Stat. § 8324(a).
[50] *MIIX Ins. Co. v. Epstein*, 937 A.2d 469, 474 (Pa. Super. Ct. 2007) (quoting *Mattia v. Sears, Roebuck & Co.*, 531 A.2d 789, 791 (Pa. Super. Ct. 1987)); *McLaughlin v. Nahata*, 260 A.3d 222, 230 (Pa. Super. Ct. 2021).

and therefore the third-party defendant's liability for the plaintiff's injury will be decided in a direct action. But contribution is available to allocate the loss fairly in any situation where "two or more persons [are] jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them."[51]

Mr. Brown contends that Mr. Woodward's complaint distinguishes Caroline's death from other injuries that she suffered in the crash and alleges that GM bears sole responsibility for that heightened injury. Accordingly, Mr. Brown asserts that he cannot be a joint tortfeasor with GM as to the death. Pennsylvania law is to the contrary, and, in the Court's view, the primary complaint is not as clear cut as Mr. Brown would have it. Moreover, several additional factors counsel that dismissal of the contribution claim at this stage would be premature.

On this count, the parties primarily dispute the current state of the crashworthiness doctrine under Pennsylvania law. "Crashworthiness doctrine . . . renders a vehicle manufacturer civilly liable to an injured plaintiff for increased or enhanced injuries over and above those which would have been sustained as a result of an initial impact, where the vehicle defect can be shown to have increased the severity of the injury."[52]

---

[51] *McLaughlin*, 260 A.3d at 230 (quoting 42 Pa. Cons. Stat. § 8322).
[52] *Harsh v. Petroll*, 887 A.2d 209, 211 n.1 (Pa. 2005) (citing *Kupetz v. Deere & Co.*, 644 A.2d 1213, 1218 (Pa. Super. Ct. 1994)).

> A crashworthiness claim requires proof of three elements. First, the plaintiff must prove that the design of the vehicle was defective, and that at the time of design an alternative, safer, and practicable design existed that could have been incorporated instead. Second, the plaintiff must identify those injuries he or she would have received if the alternative design had instead been used. Third, the plaintiff must demonstrate what injuries were attributable to the defective design.[53]

As Mr. Brown sees crashworthiness, the doctrine envisions "mutually exclusive," injuries in an accident that satisfies the elements of the cause of action, and therefore the initial tortfeasor who caused the accident would only be liable "for those injuries *he* caused, presuming a reasonably safe car."[54] In contrast, the manufacturer would only (and exclusively) be liable for the enhanced injuries that resulted from the lack of crashworthiness.[55] On this reading, "when claims against separate defendants are premised on negligence and crashworthiness . . . the manufacturer and the negligent driver can never be joint tortfeasors."[56]

Mr. Brown's problem is that the Pennsylvania Supreme Court fundamentally rejected this view of the division of injuries on a crashworthiness claim in *Harsh v. Petroll*.[57] In *Harsh*, the Supreme Court reasoned that Pennsylvania law's adherence to the principles of risk allocation and concurrent causation counseled in favor of

---

[53] *Gaudio v. Ford Motor Co.*, 976 A.2d 524, 532 (Pa. Super. Ct. 2009) (citing *Kupetz*, 644 A.2d at 1218).
[54] *Carrasquilla v. Mazda Motor Corp.*, 963 F. Supp. 455, 459 (M.D. Pa. 1997) (emphasis in original).
[55] *Id.*
[56] *Id.*
[57] 887 A.2d 209 (2005); *see id.* at 211, 218 (noting the "line of federal court decisions"—including *Carrasquilla*—that the Supreme Court eventually rejected).

12

"extend[ing] [the principle of concurrent causation] to cases involving enhanced injuries."[58] It explained that "in fashioning a just and coherent crashworthiness jurisprudence . . . the concept of enhancement" was developed as a means of "delineat[ing] the basis for and extent of a manufacturer's responsibility to answer in damages for an injury."[59] But, "the interests of justice do not require that the same line of demarcation operate automatically to relieve from liability a negligent tortfeasor whose concurrent conduct also served as a substantial factor in producing the additional harm."[60] In other words, the point at which a lack of crashworthiness becomes a cause of enhanced injuries is only relevant for determining where the manufacturer's liability *begins*, and *not* where the initial tortfeasor's liability *ends*.[61] The latter question should be answered under a standard concurrent causation inquiry.[62]

Under *Harsh*, the injuries in a crashworthiness case are exclusive as a matter of law only insofar as the manufacturer cannot be liable for divisible injuries caused

---

[58] *Id.* at 218.
[59] *Id.*
[60] *Id.*
[61] *Id.* at 219 ("In summary, although crashworthiness theory establishes a basis to support manufacturer liability for enhanced injury, it does not require that a manufacturer be the exclusive cause of such injury, *nor does it diminish the causal link that exists between an initial collision and all resultant harm*." (emphasis added)); *see id.* at 218 n.21 ("The plain fact is that the tortfeasor who precipitated the accident is liable for *all* of the plaintiff's injuries." (quoting Michael Hoenig, *Resolution of 'Crashworthiness' Design Claims*, 55 St. John L. Rev. 633, 703-04 (1981)))
[62] *Id.* at 218-19; *id.* at 215-16 (discussing with apparent approval Rest. (Third) of Torts, Products Liability § 16(d) (1997)).

by the crash that are not related to a lack of crashworthiness.[63] And, for the purposes of the instant motion, *Harsh* means that Mr. Woodward's specification of when Christine's injuries occurred is not particularly relevant to Mr. Brown's potential liability. Mr. Woodward's allegations contain no other details from which the Court could conclusively determine Mr. Brown's liability at this stage of the litigation. Indeed, the complaint appears to hold open the possibility that Christine's death was caused by joint tortfeasors, repeatedly noting that GM's actions "were *a* factual cause of [Christine's] injuries and death."[64] GM, on the other hand, has clearly alleged that *all* of Christine's injuries were caused, at least in part, by Mr. Brown.[65] Taking those allegations as true, GM may be able to demonstrate that Mr. Brown's conduct proximately caused Christine's injuries, including her death, and could therefore prevail on a contribution claim.

Furthermore, Mr. Brown's protestations about the limited nature of Mr. Woodward's complaint are especially unconvincing in light of *Herbert v. General Motors Corporation*.[66] In that case, the *original plaintiff* moved to strike the manufacturer's third-party complaint himself by affirmatively arguing that "he seeks damages only for the enhanced injuries caused by the defective seatbelt."[67] Yet

---

[63] *See* Rest. (Third) of Torts, Products Liability § 16(b).
[64] Doc. 1 ¶¶ 49-52, 62, 68, 71, 72, 73 (emphasis added).
[65] Doc. 29 ¶¶ 15-18, 22.
[66] No. 05-CV-2152, 2006 WL 8449868 (M.D. Pa. Sept. 28, 2006).
[67] *Id.* at *3.

despite the plaintiff's efforts to limit his claim to the manufacturer, the Honorable Edwin M. Kosik, writing for this Court, refused to "discard the general rule articulated in *Harsh*," and permitted the third-party complaint between the manufacturer and the driver to proceed under a standard causal analysis.[68] This case is no different, and I similarly decline to dismiss the third-party complaint.[69]

Turning to Mr. Brown's practical concerns, I agree that I cannot ignore the risk of inconsistent verdicts given the proliferation of cases involving this accident. But contrary to Mr. Brown's vague suggestions,[70] the greatest potential for inconsistent verdicts lies in cutting off GM's contribution claim at this early stage. Mr. Woodward is explicitly seeking recovery from Mr. Brown for all of Christine's injuries, *including death*, in the Tioga County proceeding.[71] Thus, the issue of whether Mr. Brown's conduct proximately caused all of Christine's injuries—both immediate and enhanced—will be adjudicated in that suit. If that question is decided affirmatively, contribution would undoubtedly be appropriate in this matter.[72] And

---

[68] *Id.*

[69] Mr. Brown attempts to distinguish *Herbert* by contending that the case involved no "facts alleged to determine 'whether the injuries from the collision are divisible . . .'" Doc. 43 at 24. That interpretation entirely misreads *Herbert*, wherein the plaintiff actively told the Court that he wished to pursue only a theory involving divisible injuries. 2006 WL 8449868, at *3. If anything, *Herbert* was a better case than this one for Mr. Brown's theory of dismissal.

[70] *See* Doc. 43 at 9, 32 (raising concerns about Mr. Brown's "exposure to inconsistent verdicts"); Doc. 47 at 4 (ballyhooing that separate cases "will result in verdicts that are virtually certain to be inconsistent with regard to Mr. Brown").

[71] *See* Compl. ¶¶ 18-19, 22, 37-44, *Woodward v. Brown*, No. 0392-CV-2024 (Pa. Ct. C.P. Tioga Cnty. July 12, 2024).

[72] *See MIIX Ins. Co.*, 937 A.2d at 474.

although I take no position on the issue at the moment, it seems likely that Mr. Brown could wield a verdict of no liability to achieve the opposite result.[73] In contrast, prohibiting the contribution claim risks two independent verdicts finding that two different parties caused Christine's death, creating the conditions for an impermissible double recovery by prematurely extinguishing the means to enforce the "equitable duty to share liability for the wrong done."[74] Finally, I am particularly concerned about creating an inconsistency with the criminal verdict against Mr. Brown given this case's factual similarity to *Harsh*.[75]

Mr. Brown's worry about the prejudice of litigating in multiple venues is similarly misplaced.[76] Although he is correct that I lack "authority to discontinue or order a stay of the Tioga County Action,"[77] I retain the inherent power to manage *this* proceeding,[78] and I see no benefit to pushing GM's contribution claim forward in this venue when Mr. Brown's liability to Mr. Woodward for Christine's death—

---

[73] *See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310-12 (3d Cir. 2009).

[74] *See Rossi v. State Farm Auto. Ins. Co.*, 465 A.2d 8, 10 (Pa. Super. Ct. 1983); *Puller v. Puller*, 110 A.2d 175, 177 (Pa. 1955).

[75] *Commonwealth v. Brown*, No. 59-CR-0000278-2023 (Pa. Ct. C.P. Tioga Cnty. May 31, 2024) (conviction of homicide by vehicle); *Harsh*, 887 A.2d at 210-11 (noting that trial court directed verdict as to causation based on criminal conviction of homicide by vehicle).

[76] *See* Doc. 43 at 9, 32.

[77] Doc. 47 at 4.

[78] *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016); *Brown v. City of Phila.*, 541 F. Supp. 3d 605, 612 (E.D. Pa. 2021) (quoting *Lue-Martin v. March Grp. LLLP*, 379 F. App'x 190, 192 (3d Cir. 2010)).

again, the exact issue GM would have to prove—is being litigated in a parallel state proceeding. So I will not subject Mr. Brown to simultaneous duplicative discovery.

Accordingly, the motion to dismiss the contribution claim is denied. But discovery on that claim is stayed pending the outcome of the state proceeding between Mr. Woodward and Mr. Brown.

## III.    CONCLUSION

Mr. Woodward's motion to strike is granted as to GM's affirmative defense 13 and denied as to affirmative defense 24. Mr. Brown's motion to dismiss is granted as to GM's negligence and indemnification claims and denied as to the contribution claim. The contribution claim is stayed pending the outcome of the related Tioga County proceeding between Mr. Woodward and Mr. Brown.

Finally, the dismissals are with prejudice. "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[79] A complaint is "futile" if even, as amended, it would fail to state a claim upon which relief could be granted.[80] Although there is a "liberal pleading philosophy of the federal rules" no amendment will be permitted because another opportunity to plead a case would be futile.[81] Because GM's third-party negligence claim connecting Mr. Brown to Mr. Woodward is never permitted, no

---

[79] *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).
[80] *Id.*
[81] *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).

new allegations could salvage it, and amendment would be futile. Because GM withdrew its indemnification claim without seeking to amend, an effort to amend now would constitute undue delay.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge